454 P.2d 660 (1969)
Appeal of the Order of Annexation Dated April 10, 1968, Issued by A. M. WICKSTRUM, County Superintendent of Schools of Texas County, Oklahoma.
No. 43190.
Supreme Court of Oklahoma.
April 18, 1969.
As Corrected May 15, 1969.
Ogden, Ogden & Board by Frank Ogden, Guymon, for plaintiff in error.
LaMar, Tryon, Sweet, Hensley & Field, by Frank E. Hensley, Guymon, for defendant in error; Haman M. Foster, Guymon, of counsel.
*662 McINERNEY, Justice.
This appeal involves an order of annexation issued by the County Superintendent of Schools of Texas County, Oklahoma. The petition for annexation described two separate areas, which together comprise the whole, of School District No. D-7 (Unity) to be annexed to two adjacent school districts, School District D-60 (Goodwell) and School District I-1 (Yarbrough), at a special election.
No attempt is made by any of the parties to preserve Unity, a grade school with a fluctuating enrollment of nine to twelve students the year of, and up to, the time of the annexation election. The average daily attendance had fallen below 13, leaving Unity subject to disorganization under 70 O.S. 1961, § 7-2, and a petition to dispense with the grade school had been filed with the county superintendent, 70 O.S. 1961, § 8-6, since amended in 1968. The petition to dispense with the grade school was received by the county superintendent on March 21, 1968. A resolution transferring all of the students from Unity was adopted by the Board of Education of the Unity School District on March 26, 1968. No students attended Unity in the 1968-1969 school year.
*663 The dispute is between the school district electors with children attending school and the school district electors without school age children. The parents of all of the children attending Unity, except two, applied for transfers to Guymon District No. 8 in accord with the resolution adopted by the Unity board. The two other school children attended Goodwell.
The petition for annexation was received by the county superintendent on March 21, 1968. The petition contained 36 names, of which 31 were ruled valid. There were 53 school district electors in the Unity School District. It is stipulated in the record that a majority of the electors residing in the area proposed to be annexed to Yarbrough and a majority of the electors residing in the area proposed to be annexed to Goodwell signed the petition. On March 26, 1968, the county superintendent called an election to be held on April 5, 1968, on the annexation petition and gave notice of the special election to the school district electors. Both the notice and the single ballot for the annexation of Unity described the territory proposed to be annexed to Yarbrough and the territory proposed to be annexed to Goodwell. The 53 school district electors voted 35 in favor of the annexation and 18 against the annexation. The order of annexation was entered on April 10, 1968 and the order affirmed on appeal to the District Court.
Disposition of this case is controlled by 70 O.S.Supp. 1963, § 7-1, since amended in 1968, which provides, in pertinent part:
"(a) The territory comprising all or part of a school district may be annexed to an adjacent school district, or to a school district in the same transportation area authorized to furnish transportation, or to two or more such districts, when approved at an annexation election called and conducted by the county superintendent of schools in pursuance of a petition for annexation signed by a majority of the school district electors in the territory proposed to be annexed, hereinafter referred to as the area affected, * * *.
"(b) The annexation shall be approved by a majority of the school district electors voting at such election, (1) of an entire school district, or (2) if a majority of the members of a board of education of a school district losing the territory concur with the petitioners, only the legal voters of the area so affected would be eligible to vote at such election."
Since a majority of the members of the board of education did not concur with the petitioners, the proposed annexation required the approval of a majority of the electors of the entire school district. And under (a) above, the territory comprising all of a school district may be annexed to two adjacent school districts at an annexation election. The terms of the statute appear to be satisfied in the present case. A majority of the school district electors in the Unity School District voted to annex the district to Yarbrough and Goodwell.
A valid and sufficient petition is a jurisdictional prerequisite to an order of annexation, Littlefield v. Howery, Okl., 266 P.2d 957, 959, and a judicial forum is provided to challenge or protest the action of the county superintendent in ordering the annexation pursuant to an election. The county superintendent has the authority and duty to determine the sufficiency of the petition when presented to him. Those persons disagreeing with his determination may invoke a judicial review. A judicial determination of the sufficiency of the petition is an evidentiary proceeding. The court may include a review of the whole record and consider any proper evidence supporting or challenging the sufficiency of the petition. McCoy et al. v. Hall, 191 Okl. 311, 131 P.2d 60.
The judicial review on appeal to the district court contemplates an adjudication based on substance rather than form. The court is not limited to an examination of the face of the petition. The court is *664 charged with the duty of determining if the proper procedure has been followed and the election fairly conducted. Under the circumstances here, when the evidence discloses that a majority of the electors of the entire school district, including a majority of the electors in both areas being annexed to adjacent school districts, have signed the petition, a challenge to the sufficiency thereof must fail.
The legislature is charged with the duty of establishing and maintaining a system of public education. Article 13, § 1 of the Oklahoma Constitution. The formation of school districts is an exercise of this governmental function. 78 C.J.S. Schools and School Districts § 27, page 663. The legislature has plenary power to create, abolish, or change school districts. Hatfield v. Jimerson, Okl., 365 P.2d 980. The enactment of 70 O.S.Supp. 1963, § 7-1 is the legislative expression of this power and duty. The function of the court is limited to an examination of the record to determine if the procedure proscribed by the statute was followed. The wisdom of the act is beyond the scope of our inquiry. Musick v. State ex rel. Miles, 185 Okl. 140, 142, 90 P.2d 631, 634. We hold that the annexation election was conducted in accord with the controlling statute and the order of annexation was properly entered thereafter.
The protestants contend that 70 O.S. 1961, § 7-2 controls the present action and requires annexation of Unity to a school within its transportation area, citing Independent School District No. 66, Pottawatomie County v. Dependent School District No. 62, Pottawatomie County, Okl., 259 P.2d 826. The cited case holds that an election which submits a question resulting in the division of a school district into two or more non-contiguous parts and the order of annexation based thereon are void. The result of the Unity election did not leave non-contiguous areas in the district. In fact, the election did not leave a district, since two areas comprising the whole were annexed to adjacent districts.
The statute, § 7-2, deals with a disorganized school district and the notice required to be given by the State Board of Education. Involuntary annexation by order of the State Board of Education is required when a school district does not maintain a school for a certain period of time or the average daily attendance falls below 13. Annexation under these circumstances is to a school district in the transportation area. Unity was not disorganized by order of the State Board of Education. Until disorganized by order of the State Board and involuntary annexation invoked by proper procedure, the voluntary annexation procedure contained in § 7-1 remains effective.
70 O.S.Supp. 1963, § 7-1, since amended in 1968, prescribes the procedure for voluntary annexation by petition. 70 O.S. 1961, § 7-2 prescribes the procedure for involuntary annexation after the district is disorganized by order of the State Board of Education. An order of the State Board of Education entered under 70 O.S. 1961, § 7-2 is ineffective to alter the result of an order of annexation, Independent School District No. 66, supra, and is, therefore, neither in conflict with, nor superior to, the provisions of § 7-1. Unity was annexed by petition and, therefore, § 7-1 is applicable here.
It is argued that the annexation of one part of Unity to an independent school district and the other part to a dependent school district denies the parents and children being transferred to the dependent district the equal protection of the laws, citing 70 O.S. 1961, § 4-2, § 4-3. These sections are a legislative classification of independent and dependent schools. It is asserted that the children going to an independent school will receive a better education than those sent to a dependent school. The verity of this general assertion, while not disputed, is not persuasive. The classification of schools is within the broad general power of the legislature. We are cited no cases, and research discloses no authority, to sustain, as a matter of constitutional law, this contention.
*665 The next contention is that 70 O.S. 1961, § 8-6, giving the parents of children attending Unity or the Board of Education of Unity the right to dispense with the school and transfer the students to another district, when once initiated, is exclusive. An incompatibility may exist between the desires of the parents with school children and the power of a majority of the school district electors under § 7-1, but we find no conflict in the two statutes. The two provisions are available to provide a remedy for entirely different situations: § 7-1 relates to annexation and § 8-6 to transfer of pupils. No language contained in the statute, or interpretation permitted by the wording, would justify our holding that the action of the Board of Education of Unity dispensing with the grade school prohibits a voluntary annexation by petition of the school district. The statutes, § 7-1 and § 8-6, are complementary to each other rather than exclusive or conflicting.
The legislature amended § 8-6, as it existed at the time of this dispute, by enacting S.L. 1968, c. 393, § 2, effective May 17, 1968. The amendment provides that any district which dispenses with its entire school district for the ensuing year shall be mandatorily annexed on July 1 by the State Board of Education. It is not suggested in the briefs that the amendment has any application to the present case.
The remaining contentions are generally answered above. When two areas, together comprising the entire district, are being annexed at one election, as provided by statute, the residence in a particular area affected of an elector signing the petition need not appear on the face of the petition. The petition is sufficient, when challenged, if the evidence supports a finding that a majority of the electors of both areas in fact signed the petition.
School District No. 9 of Tulsa County v. Board of County Commissioners of Tulsa County, 138 Okl. 254, 280 P. 807 is cited to support the contention that the residence of the electors in the separate areas to be annexed must appear on the face of the petition. The cited case considered a similar question under the then existing annexation statute, § 10405, C.O.S. 1921. The court held that the record being reviewed did not support a finding that a majority of the electors in both areas being annexed had signed the petition. An election was not required. Dowell v. Board of Education of Oklahoma City, 185 Okl. 342, 91 P.2d 771. The only statutory prerequisite to an order of annexation by the county superintendent after he received a petition for "attachment or detachment of the territory" was "if he deem it proper and to the best interests of the school of such city or town." An appeal from the order of the county superintendent to the county commissioners was provided.
In School District No. 9 of Tulsa County, supra, the court reasoned, on page 808, that the requirements of the annexation statute had not been met because "we have no way of knowing whether a majority of the electors of the territory annexed either to Tulsa independent district or to Jenks independent district signed the petition, which we have held was jurisdictional." The problem posed by the quoted remarks of the court is not present in this case. The parties have stipulated that a majority of the electors of the territory annexed to Goodwell and to Yarbrough signed the petition. For reasons stated earlier, the petition on which the order of annexation is based may be challenged or supported by evidence. The ballot conformed to the petition as authorized by 70 O.S. 1961, § 7-1, since amended. The evidence supported the judgment of the trial court.
Judgment affirmed.
All the Justices concur.