Dear Senate Long
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
 Do the provisions of 3A O.S. 205.2a (1991) prohibit the Oklahoma Horse Racing Commission from approving organization license ownership by persons who were denied a license in the past for reasons unrelated to bad character, such as a denial based on market saturation?
¶ 1 The Oklahoma Horse Racing Act, 3A O.S. 200 (1991), etseq., vests the Oklahoma Racing Commission with plenary power to promulgate rules and regulations for the forceful control of race meetings held in the state. In the interest of the public health, safety and welfare, the Commission is required, in adopting its rules and regulations, to encourage agriculture and the breeding of horses in this State; maintain race meetings held in this State of the highest quality and "free of any horse racing practices which are corrupt, incompetent, dishonest, or unprincipled;" and "dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of horse racing in this State."3A O.S. 203.7 (1991).
¶ 2 Persons desiring to conduct a race meeting in Oklahoma must, under the Act, apply to the Commission for an organization license (race track license). 3A O.S. 205.1 (1991). To insure that those with undesirable backgrounds are not associated with racing in Oklahoma, the Act makes certain persons ineligible to be granted an organization license. Title 3A O.S. 205.3 (1991), provides in applicable part:
No organization license shall be granted:
 1. to any applicant if the applicant or a person owning an interest in the applicant:
a. has been convicted of a felony, or
 b. has been convicted of violating any law regarding gambling or controlled dangerous substances of the United States, this state, or any other state, or
c. has a federal or state criminal charge pending, or
 d. is or has been connected with or engaged in the operation of any illegal business[.]
¶ 3 Once an organization license has been granted, no person shall in any manner become the owner or holder directly or indirectly of any share of stock or certificates or other evidence of ownership of any interest in the organizational license, without first having obtained the approval of the Commission. 3A O.S. 205.2a (1991). That statute provides that the Commission may not approve a change in ownership to a person convicted of a felony or a crime involving moral turpitude, or to a person who has violated any racing law of this State or any other state. The portion of 3A O.S. 205.2a which prohibits approval of ownership by such persons, in pertinent part, provides:
 Under no circumstances shall the Commission give such approval to any person who has been convicted of a felony or a crime involving moral turpitude, unless said person has been granted a full and unconditional pardon. Under no circumstances shall the Commission give such approval to any person who has violated any of the provisions of the racing laws of this state or any other state, or has at any time been denied a license or permit of any kind by the Commission.
(Emphasis added.)
¶ 4 The question you pose deals with the meaning of the last phrase of the above-quoted statute, which under one interpretation could be read to prohibit approval of ownership by any person who "has at any time been denied a license or permit of any kind by the Commission." The essence of your question is whether that language prohibits the Commission from approving transfer of ownership of a license, or granting a license, to a person who in the past has been denied a license on grounds that do not negatively reflect on their character — such as denial of a license based on market oversaturation.
¶ 5 As the Oklahoma Supreme Court has held, when the provision of a statute has a doubtful meaning, "it should be given aconstruction that is reasonable and sensible, bearing in mindthe evils intended to be avoided or the remedy intended to be afforded, and the Legislature will be presumed not to have intended an absurd result." E.g., Independent Sch. Dist., etc.v. Independent Sch. D, etc., 363 P.2d 835, 838 (Okla. 1961). A reading of the Oklahoma Horse Racing Commission Act as a whole makes it clear that the evil to be avoided by restricting those eligible for a license, or ownership in a license, is ownership of licenses by those whose past behavior has indicated they are corrupt, dishonest, unprincipled, or lack integrity, as demonstrated by their having violated criminal laws or racing or gambling laws. The class of individuals sought to be avoided by the statutes are those who might have a corrupting influence on racing.
¶ 6 It would be absurd to include within this class persons who were denied a license in the past not because of a past history that demonstrated that they would be a potential corrupting influence on racing, but because of market conditions at the time of their old application. Such an interpretation would wholly ignore the evil intended to be avoided. Indeed, such an interpretation would make ineligible, forever, honest and otherwise qualified applicants simply because, at the time of their prior application, the current market conditions would not justify more race meetings in a particular market.
¶ 7 It was not the intent of the statute to forever preclude such an unsuccessful applicant from applying or being granted a license. Rather, the intent of the statute was to avoid the issuance of organization licenses, or ownership in such licenses, to those whose past history, by virtue of criminal convictions or violation of racing statutes, were shown to be undesirable. Accordingly, we interpret 3A O.S. 205.2a (1991) to apply only to those denied a license for reasons demonstrating unfit character demonstrated by prior convictions of a felony, conviction of a crime involving moral turpitude, or conviction of violation of racing laws of this or any state.
¶ 8 It is, therefore, the official opinion of the AttorneyGeneral that the portions of 3A O.S. 205.2a (1991), whichprovide that under no circumstance shall the Commission approveownership in an organization license a race track license by anyperson who has violated any of the provisions of the racing lawsof this State or any other state, or has been denied a license orpermit of any kind by the Racing Commission, only apply to thedenial of licenses or permits for reasons demonstrating that theapplicant is of unfit character. Thus, a denial of a past licenseapplication because of technical insufficiencies or marketsaturation at the time of the application does not preclude theCommission from subsequently granting an organization license orapproving of an ownership interest in organization licenses, by aperson formerly denied a license on such grounds.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL